(57 P.3d 24)

No. 87,715

FARMERS INSURANCE COMPANY, INC., *Appellee*, v. BERNADETTE JOKAN, and BERNADETTE JOKAN, NATURAL MOTHER OF ALEXANDER JOKAN, and BERNADETTE JOKAN, NATURAL MOTHER OF MALIA JOKAN, *Appellants*.

Opinion filed November 1, 2002.

*Steven A. Ediger*, of Kansas City, Missouri, for the appellants.

*Bren Abbott*, of Law Offices of Kenneth J. Berra, of Kansas City, Missouri, for the appellee.

Before JOHNSON, P.J., PIERRON, J., and BUCHELE, S.J.

BUCHELE, J: Bernadette Jokan appeals the district court's grant of summary judgment in favor of Farmers Insurance Company, Inc. (Farmers).

The underlying facts in this case are not in dispute and have been stipulated to by the parties.

On June 10, 2000, Ranol Jokan was riding in a car driven by James Syrokosz. The car crossed the centerline and struck several vehicles. Ranol died as a result of his injuries. At the time of the

accident, Farmers insured the Syrokosz car. The policy limited liability to $100,000 per person and $300,000 per occurrence, subject to the terms and conditions listed within the policy.

Ranol was survived by his wife, Bernadette Jokan, and two minor children— Alexander Jokan, who was 2 years old, and Malia Jokan, who was 4 years old, at the time this action was filed. The surviving Jokans demanded personal injury protection benefits and compensatory damages. Farmers agreed to pay the policy limits for personal injury protection benefits, plus $100,000, the per person limit under the liability section of the policy.

The Jokans demanded payment of $300,000 under the "per occurrence" limitation of liability. Their position is that the "Limits of Liability" section of the policy is ambiguous. Also they contend the loss of Ranol's earnings is not within the "per person" policy limits but is a covered loss under the per occurrence cap.

The district court granted summary judgment in favor of Farmers. The court found that the policy language regarding the limits of liability was not ambiguous and limited the damages of the Jokans to $100,000.

Resolution of this issue requires interpretation of both the insurance policy and the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.* Interpretation of an insurance contract is a question of law. *Harris v. Richards*, 254 Kan. 549, Syl. ¶ 1, 867 P.2d 325 (1994). Interpretation of a statute is also a question of law. This court's review over questions of law is unlimited. See *Rose & Nelson v. Frank*, 25 Kan. App. 2d 22, 24, 956 P.2d 729, *rev. denied* 265 Kan. 888 (1998).

The policy Farmers issued to Syrokosz provided:

"We will pay damages for which any insured person is legally liable because of bodily injury to any person, and/or property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer.

. . . .

"Limits of Liability

"The limits of liability shown in the Declarations apply subject to the following.

 1. The bodily injury liability limit for 'each person' is the maximum for bodily injury sustained by one person in any occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

2. Subject to the bodily injury liability limit for 'each person' the bodily injury liability limit for 'each occurrence' is the maximum combined amount for bodily injury sustained by two or more persons in any occurrence.
3. The property damage liability limit for 'each occurrence' is the maximum for all damages to all property in any one occurrence.
4. We will pay no more than the maximum limits provided by this policy regardless of the number of vehicles insured, insured persons, claims, claimants or policies, or vehicles involved in the occurrence."

## The policy also provided the following definitions:

"Accident or occurrence means a sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured person.

"Bodily injury means bodily injury to or sickness, disease or death of any person.

"Damages are the cost of compensating those who suffer bodily injury or property damage from an accident.

. . . .

" 'Eligible injured person' means
 (1) the named insured or any relative who sustains bodily injury while occupying, or through direct physical contact with while not occupying, any motor vehicle, or
 (2) any other person who sustains bodily injury while occupying the insured motor vehicle or through direct physical contact with the insured motor vehicle while not occupying any motor vehicle.

. . . .

" 'Survivor' means a deceased eligible injured person's spouse, or child under the age of eighteen (18) years, where such person's death resulted from a bodily injury."

## K.S.A. 40-3107 provides, in material part:

"Every policy of motor vehicle liability insurance issued by an insurer to an owner residing in this state shall:

. . . .

(e) contain stated limits of liability, exclusive of interest and costs, with respect to each vehicle for which coverage is granted, not less than $25,000 because of bodily injury to, or death of, one person in any one accident and, subject to the limit for one person, to a limit of not less than $50,000 because of bodily injury to, or death of, two or more persons in any one accident, and to a limit of not less than $10,000 because of harm to or destruction of property of others in any one accident;

. . . .

(g) notwithstanding any omitted or inconsistent language, any contract of insurance which an insurer represents as or which purports to be a motor vehicle

liability insurance policy meeting the requirements of this act shall be construed to obligate the insurer to meet all the mandatory requirements and obligations of this act."

The Jokans contend that Farmers is in violation of the KAIRA because of its policy definition of damages. They argue the policy violates 40-3107(e) because it limits Farmers' obligation of compensation to those who actually suffered an injury. The cornerstone of this argument is the use of the phrase "because of bodily injury" in K.S.A. 40-3107(e). The Jokans' position is that the statutory phrase "because of bodily injury" is legally distinguishable from the policy phrase "those who suffer bodily injury" because the phrase "because of bodily injury" connotes a cause and effect situation in which a person who was not physically harmed is eligible for compensation as the result of injury sustained by another, without being limited by the per person cap. In contrast, they argue "those who suffer bodily injury" connotes recovery by only the injured person.

From this interpretation of the policy, they move to 40-3107(e), which requires insurers to give stated limits of liability of not less than $25,000 because of bodily injury sustained by one person and a minimum of $50,000 when two or more persons sustain bodily injury. Relying on this statute, the Jokans contend that the legislature intended insurance companies to provide liability limits for each person, meaning an injured person, plus each person who may have a derivative claim resulting from an injury sustained in an automobile accident.

We believe the statute is clear and unambiguous. K.S.A. 40-3107(e) does not use the word "each." Instead, it sets the minimum liability as $25,000 for one person and $50,000 for two or more persons, subject to other limitations in the policy. The legislature intended coverage of a minimum of $25,000 when one person is injured in an accident and a minimum of $50,000 when more than one person is injured in an accident. See *Fam Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, 300-01, 806 P.2d 993 (1991). The statute does not require insurers to provide coverage for derivative claimants in excess of the "per person" policy limitation. Derivative claims are the consequence of injury suffered by another; they

depend upon rights of the injured party to recover and are subject to the same defenses available to the underlying personal injury claim. See *Kinsella v. Farmers Ins. Exchange*, 826 P.2d 433, 435 (Colo. App. 1992); *T. Copeland & Sons v. Kansa General Ins. Co.*, 171 Vt, 189, 195-96, 762 A.2d 471 (2000).

The Farmers' policy at issue here allows recovery of a maximum of $100,000 by the injured person, up to a maximum of $300,000 per accident, regardless of the number of persons injured. Since the only injured person covered under the policy was Ranol, recovery is limited to a maximum of $100,000. If two of the Jokans had been injured, then their recovery would have been limited to a total of $200,000 because of the per person limitation of $100,000. If all four of the Jokans had been injured, their recovery would have been limited to $300,000.

K.S.A. 60-1902 provides that a wrongful death action may be brought by any one of the heirs at law of the deceased who has sustained a loss by reason of the death. The Jokans correctly argue that under the wrongful death statutes, the Jokan children have a derivative claim for the loss of Ranol's income. However, this right does not equate to a right to compensation from Farmers.

As stated above, under 40-3107(e) and the limitation of liability section of the policy, Farmers is required to provide liability compensation up to $100,000 in the event that one person is injured in one accident. The definition of damages in the policy (the cost of compensating those who suffer bodily injury) is consistent with the statute. Farmers is required to provide compensation of up to $100,000 because of the injuries to one person, Ranol. Compensation is due to either the injured person or the injured person's representative in the event of death or incapacity. See *Farmers Ins. Co. v. Rosen*, 17 Kan. App. 2d 468, 839 P.2d 71, *rev. denied* 252 Kan. 1091 (1992). Farmers tendered the required compensation to the Jokans.

The Jokans rely on *Rosen* in an attempt to establish that derivative damages are covered by the policy. We disagree with their reading of *Rosen*.

In *Rosen*, April Rosen was struck by a pickup truck driven by an insured of Farmers. April was a minor at the time of the accident,

so her parents, James and Ginger Rosen, filed suit against Farmers for loss of consortium, medical bills, and expenses.

Farmers conceded, under a policy containing the same language as the policy in the present case, that it was required to pay for damages that any insured person would be legally liable for because of bodily injury to any person. Since the loss of consortium and the payment of medical expenses were damages for which the Farmers' insured may have been legally liable because of bodily injuries to April, Farmers agreed those damages came within the coverage provisions of the policy. However, this stipulation did not lead to recovery by the Rosens.

In framing the issue presented, the *Rosen* court stated:

"The real question as argued by Farmers and the Rosens is whether James and Ginger Rosen's claims for loss of care and loss of services, here admittedly covered damages under Farmers' automobile policy, come within the operation of the automobile policy's per person limitation, with the result being that Farmers' exposure under the automobile policy is limited to the policy's $100,000 per person limit rather than the policy's $300,000 per occurrence limit." 17 Kan. App. 2d at 471.

The Rosens claimed that the policy covered each of the three claims, subject to the $300,000 per occurrence limitation. In affirming the grant of summary judgment in favor of Farmers, the *Rosen* court held:

"We are persuaded and hold that the pertinent language of Farmers' automobile policy is unambiguous, that coverage under Farmers' automobile policy for James and Ginger Rosen's claims is subject to the policy's $100,000 per person liability limit applicable to April Rosen's claim, and that Farmers' exposure for the three Rosen's claims is limited to $100,000." 17 Kan. App. 2d at 474.

In the present case, Farmers acknowledges it will pay damages for which its insured is legally liable. However, those claims are subject to the $100,000 per person limitation set forth in the policy. The Jokans' derivative claims, just as the Rosens' claims, are subject to the per person limitation set forth in the policy.

The Jokans next argue that Farmers' policy is ambiguous.

"Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted]." *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 240, 865 P.2d 182

(1993). "As a general rule, the interpretation or construction and meaning and legal effect of written instruments are matters of law exclusively for the court and not questions of fact." *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 311, 856 P.2d 111 (1993).

"Ambiguity is not to be derived from or created by the fragmentation of an insurance contract. . . . Ambiguity arises from conflicting provisions not from the failure to include all the terms of a contract in each of its parts.

. . . .

"[A]mbiguities in the wording of insurance contracts are to be construed in favor of the insured [; however,] this rule has no application whatsoever to language that is clear in its meaning. [Citations omitted.] . . . Where an insurance contract is not ambiguous, a court's function is to enforce the contract made, not to make another contract for the parties. [Citations omitted.]" *Scott v. Keever*, 212 Kan. 719, 723-25, 512 P.2d 346 (1973).

The question presented is whether the language "loss of consortium or injury to the relationship" is specific enough for this court to decide if lost wages are included in the liability limitations. The Jokans contend that under the doctrines of *expression unius est exclusion alterus* and "reverse construction," Farmers' failure to specifically exclude economic losses means that in derivative actions, economic losses are not subject to the $100,000 per person cap. A Kansas appellate court has not decided this issue.

"Loss of consortium" and "injury to the relationship" are not defined within the policy. "Consortium has been defined as a right growing out of the marital relationship which includes the right of either spouse to the society, companionship, conjugal affection and assistance of the other." *Hoffman v. Dautel*, 192 Kan. 406, 411, 388 P.2d 615 (1964). By this definition loss of consortium is not applicable to the claim of lost income on behalf of the children.

Since "injury to the relationship" is not defined in the policy, it is helpful to look to a judicial interpretation of a similar phrase. In *Fisher v. State Farm Mut. Auto. Ins. Co.*, 264 Kan. 111, 955 P.2d 622 (1998), the Kansas Supreme Court was asked to determine whether an award of workers compensation benefits, paid to an employee who was killed while in the scope of employment by an underinsured motorist, precluded the heirs from pursuing a claim under the underinsured motorist coverage of the insurer's policy.

In *Fisher*, the district court had reviewed K.S.A. 44-504(b), the statute that governs subrogation in workers compensation claims,

and noted that the statute distinguished "loss of consortium" as being a noneconomic loss and "loss of services" as being an economic loss. However, the verdict form did not distinguish between loss of services and loss of wages. An expert testified regarding the value of the loss of wages and the loss of services. The jury disregarded the testimony and returned a verdict that was significantly less than the expert's combined total. The court used the expert's figures, calculated the percentages of loss of wages and loss of services, respectively, and applied the loss of services percentage to the jury verdict. Since wages are covered by workers compensation, the court awarded the heirs the percentage of the jury verdict for "loss of services" only. The Supreme Court affirmed.

Since the workers compensation statute is similar to the exclusionary language of the Farmers' policy, in that both involve loss of consortium and loss of services, it is instructive that at least one Kansas court has construed the phrase "loss of services," in a derivative suit brought by heirs, to include a loss of wages. See *Fisher*, 264 Kan. at 124-26.

Recently, in *Clark v. Scarpelli*, 91 Ohio St. 3d 271, 744 N.E.2d 719 (2001), the Ohio Supreme Court was asked whether the same policy language as in the Farmers' policy in the present case was clear and unambiguous because it restricted wrongful death derivative claims to the per person cap.

The policy in question contained the exact limiting language as in this case regarding "loss of consortium" and "injury to the relationship." The *Clark* court found that "the phrase 'injury to the relationship' is a clear reference to claims for wrongful death as contemplated by the [insurance] policy." 91 Ohio St. 3d at 283.

The *Clark* court, recognizing that wrongful death beneficiaries are statutorily authorized to recover benefits in actions brought for the "exclusive benefit" of the decedent's next of kin, concluded:

"In that regard, the wrongful death itself and the relationship between the decedent and his next of kin are inextricably intertwined. It is axiomatic that there would be no cause of action for wrongful death without both a wrongful death and the existence of at least one living statutory beneficiary of the decedent. Thus, we agree with the court of appeals that the language 'loss of consortium or injury

to the relationship' encompasses all derivative claims, including claims for wrongful death." 91 Ohio St. 3d at 284.

As a result of its conclusion, the *Clark* court held that any derivative claim arising from the death of the petitioner's son was included in the "single each-person policy limit." 91 Ohio St.3d at 284.

This conclusion is consistent with the Colorado Court of Appeals' decision in *Kinsella*, 826 P.2d 433, where the plaintiff's minor son was seriously injured in a car accident. The medical bills were stipulated to exceed $200,000. The insurance policy provided uninsured motorist coverage of $100,000 per person and $300,000 per occurrence. Farmers paid $100,000 in uninsured motorist benefits and $100,000 in personal injury protection benefits. The policy contained the exact language as the policy in the present case.

The plaintiff sought an additional $100,000 in uninsured motorist benefits for medical expenses incurred on his son's behalf. Farmers denied the claim, asserting the policy limited recovery to $100,000 because of the per person restriction.

The plaintiff filed a declaratory action, and both sides filed motions for summary judgment. The trial court found the policy unambiguously limited the amount of recovery of uninsured motorist benefits to $100,000 and the plaintiff's derivative claim failed because the policy limits had been exhausted by payment on the son's personal injury claim.

On appeal, the *Kinsella* court recognized that derivative claims are dependent upon the right of the injured party to recover and are subject to the same defenses available to the underlying personal injury claim. 826 P.2d at 435. The court found that the claim for medical expenses was not based upon separate injury to the plaintiff and, absent a showing that plaintiff sustained separate bodily injury, the $100,000 per person limitation applied. 826 P.2d at 435.

Additionally, the *Kinsella* court found the policy was not ambiguous because it plainly placed the limit of liability for bodily injury sustained by one person at $100,000 maximum. 826 P.2d at 435. The court rejected the plaintiff's argument that because his claim

was a derivative claim for medical expenses, it was excepted out of the limitation clause because it was not a claim for loss of consortium or injury to the relationship. The court viewed the limiting language of loss of consortium and injury to the relationship as being surplusage at best, since the sentence immediately preceding the limitations specifically limited recovery to $100,000 when only one person sustained bodily injury. 826 P.2d at 435-36.

The Jokans' argument that injury to the relationship refers to intangible aspects of the relationship between an injured person and his or her family, not pecuniary damages, such as loss of income, is persuasive. Since loss of consortium clearly involves a marital relationship, then it is logical to conclude the injury to the relationship exception was intended to cover nonmarital relationships. Further, the argument that Farmers could have easily and early excepted out all economic losses is also persuasive.

However, "[a]mbiguity arises from conflicting provisions not from the failure to include all the terms of a contract in each of its parts." *Scott,* 212 Kan. at 723. Here, the policy does not contain conflicting parts. It clearly limits recovery under the liability section to $100,000 when one person is injured or killed in an accident. Farmers' failure to specifically list each conceivable exception does not create ambiguity. As the *Kinsella* court held, the "loss of consortium/loss of relationship" language is surplusage. 826 P. 2d at 436. The limiting language is clear and unambiguous.

We conclude that the policy language here unambiguously limits recovery for bodily injury sustained by one person to $100,000 and that this limitation encompasses all derivative claims, including loss of income.

Affirmed.